# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| In Re: ) | **JUDGE RICHARD L. SPEER** |
| Thomas/Cheryl McMillen ) | Case No. 12-3009 |
| Debtor(s) ) | (Related Case: 11-35223) |
| Peter Ankney ) | |
| Plaintiff(s) ) | |
| v. ) | |
| Thomas McMillen, et al. ) | |
| Defendant(s) ) | |

## DECISION AND ORDER

This cause comes before the Court on the Motion of the Plaintiff, Peter H. Ankney, for Summary Judgment and Memorandum in Support. (Doc. No. 12). The Plaintiff brings his Motion for Summary Judgment in support of his Complaint to Determine the Dischargeability of a particular debt pursuant to 11 U.S.C. § 523(a)(6), excepting from discharge any debt arising from a willful and malicious injury caused by a debtor. (Doc. No. 1). The Defendants, Thomas and Cheryl McMillen, filed a Memorandum in opposition to the Plaintiff's Motion for Summary Judgment. (Doc. No. 13). The Plaintiff then filed a Responsive Memorandum thereto. (Doc. No. 14). The Court has now had the opportunity to review the arguments and evidentiary materials presented by the Parties. Based upon this review, the Court, for the reasons set forth below, finds that the Plaintiff's Motion for Summary Judgment should be Granted.

Peter Ankney v. Thomas McMillen, et al
Case No. 12-3009

## FACTS

The Defendants in this matter, Thomas and Cheryl McMillen, own and operate a wood-working business. In 2006, the Plaintiff, Peter Ankney, was an employee of the Defendants. While an employee of the Defendants, the Plaintiff operated a table saw.

The table saw operated by the Plaintiff was purchased by the Defendants in the mid-1980's. At the time the saw was purchased, it came equipped with certain safety features such as a blade guard, a spreader and anti-kick back dogs. However, sometime in 2003 or 2004, these particular safety devices were removed.

Near the end of 2006, the Plaintiff, while operating the table saw, suffered a serious injury to his hand. As a result of the injury to his hand, the Plaintiff brought suit in state court against the Defendants. On December 24, 2009, judgment was entered in the Plaintiff's favor by the Common Pleas Court in Defiance County, Ohio. This judgment provided, *inter alia*:

> Upon due consideration of the evidence presented, the pleadings, the answers to interrogatories, and the Affidavits, the Court finds that reasonable minds can come to but one conclusion and that conclusion is that Defendants deliberately removed a safety guard on the machine which caused injury to the Plaintiff; that Plaintiff was not liable; and therefore, Plaintiff's motion is well taken.
>
> It is therefore Ordered, Adjudged and Decreed that Plaintiff be and hereby is awarded summary judgment on the issue of the Defendant's intentional conduct; that such conduct did cause injury to the Plaintiff, and the Court does hereby enter final judgment in favor of said Plaintiff on the issue of liability and the injuries resulting therefrom. The Court further finds that the Plaintiff was not liable in any respect; and that as a result of the Defendants' intentional conduct, Plaintiff suffered injuries. The jury trial in this matter shall be solely for determination of the amount of damages to the Plaintiff.

(Doc. No. 12, Ex. 4).

Subsequent to the entry of this judgment, the Parties reached a settlement on the issue of damages. Based upon this settlement, a judgment entry was entered by the state court, setting liability against the Defendants in the amount of $200,000.00. (Doc. No. 12, Ex. 5). The judgment entry, however, also provided that if the Defendants made a biannual payment to the Plaintiff in the amount of $5,000.00, the award of damages to the Plaintiff would be limited to $50,000.00. *Id.*

On September 27, 2011, the Defendants filed a petition for relief under Chapter 7 of the United States Bankruptcy Code. In the schedules they filed with their bankruptcy petition, the Defendants disclosed a claim held by the Plaintiff in the amount of $50,000.00. The Defendants also disclosed a claim to the Ohio Bureau of Workers' Compensation in the amount of $87,425.77. On January 12, 2012, the Plaintiff commenced the action now before the Court, seeking a determination that his claim against the Defendants is a nondischargeable debt.

## DISCUSSION

The Plaintiff's Motion for Summary Judgment seeks a determination that the liability adjudicated in state court against the Defendants is a nondischargeable debt pursuant to Bankruptcy Code § 532(a)(6). Under 28 U.S.C. § 157(b)(2)(I), a determination as to the dischargeability of a particular debt is deemed to be a core proceeding, thereby conferring on this Court jurisdiction to enter final orders and judgments. 28 U.S.C. § 157(b)(1).

Section 523(a)(6) of the Bankruptcy Code provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

This exception to discharge is one of the oldest known in American bankruptcy jurisprudence – being part of the original Bankruptcy Act of 1898 – and is aimed at the type of both socially and

Page 3

morally reprehensible conduct that is not deserving of the fresh-start policy which underlies the Bankruptcy Code. *Superior Metal Prods. v. Martin (In re Martin)*, 321 B.R. 437, 442 (Bankr. N.D.Ohio 2004).

As with the other exceptions to dischargeability, it is the movant's burden to establish, by at least a preponderance of the evidence, the applicability of § 523(a)(6). *Grange Mut. Cas. Co. v. Chapman (In re Chapman)*, 228 B.R. 899, 906 (Bankr. N.D.Ohio 1998). Since § 523(a)(6) is written in the conjunctive, this means demonstrating that the debtor's conduct was both "willful" and "malicious." *Graffice v. Grim (In re Grim)*, 293 B.R. 156, 167 (Bankr. N.D.Ohio 2003). In his Motion for Summary Judgment, it is the position of the Plaintiff that the factual circumstances as presented to the Court show that these requirements have been met.

As support for his position, the Plaintiff pointed to the safety features removed from the saw which caused his injury. As well, the Plaintiff called attention to the Defendants' failure to provide safety training and adequate eye protection. According to the Plaintiff, these acts "show a callus [sic] disregard for safety and raise Defendant's acts to an intentional and malicious level." (Doc. No. 12, at pg. 14).

In addressing the term "willful," as used in § 523(a)(6), the United States Supreme Court has stated that the "word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 977, 140 L.Ed.2d 90 (1998). Based upon this holding, the Sixth Circuit explained that "unless the actor desires to cause consequences of his act, or believes that the consequences are substantially certain to result from it, he has not committed a 'willful and malicious injury' as defined under § 523(a)(6)." *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 464 (6th Cir.1999) (internal quotations and citations omitted). In following these decisions, this Court has held that a "willful" injury under § 523(a)(6) requires a showing that the debtor acted with the specific intent to cause injury, or was substantially certain that an injury would occur. *In re Frick*, 427 B.R. 627, 633 (Bankr. N.D.Ohio 2010).

Page 4

Peter Ankney v. Thomas McMillen, et al
Case No. 12-3009

Based, therefore, on these constructs, a determination of whether a debtor acted willfully for purposes requires an assessment of a debtor's subjective mental state. The need to assess a debtor's mental state, however, normally means that, for an action brought under § 523(a)(6), the entry of summary judgment in favor of a plaintiff is not appropriate. As this Court has explained:

> The purpose of a summary judgment motion is to avoid the need for a trial, and its attendant costs, where there exists no genuine issues of material fact in dispute. Summary judgment is, therefore, never to be used merely to cut short a trial where factual issues should be explored. This usually makes summary judgment an inappropriate procedural device to adjudicate claims, such as those brought under § 523(a)(2), § 523(a)(4) and § 523(a)(6), where a litigant's state of mind has been placed in controversy. The reason: Determinations concerning a debtor's state of mind require a subjective assessment of the debtor's intentions which often can only be made by the trier-of-fact after it has had the opportunity to assess the credibility and the demeanor of witnesses who testify at trial during both direct and cross examination.

*Hoffman v. Anstead (In re Anstead)*, 436 B.R. 497, 500-01 (Bankr. N.D.Ohio 2010) (internal citations omitted).

In this case, the Defendant, Thomas McMillen, raised a couple of points, both of which cast doubt on the Plaintiff's position that Mr. McMillen acted willfully and maliciously within the meaning of § 523(a)(6). Most notably, in an affidavit submitted to the Court, Mr. McMillen contends that he never removed any safety features on the saw in question. (Doc. No. 13). Mr. McMillen also contends that he observed the Plaintiff operating the saw in an unsafe manner and causing his own injury. *Id.* These contentions made by Mr. McMillen, however, while potentially giving rise to a dispute of fact, do not necessarily foreclose the entry of summary judgment in the Plaintiff's favor.

Even in an action where a debtor's subjective mental state has been placed directly in controversy, summary judgment may still be appropriate where the issue before the court is primarily of a legal nature, as opposed to a factual dispute. *H. Park Partners v. Frick (In re Frick)*, 427 B.R. 627, 632 (Bankr. N.D.Ohio 2010), *citing Jankovitz v. Des Moines Indep. Cmty. Sch. Dist.*, 421 F.3d 649, 653 (8th Cir. 2005) (where the unresolved issues are primarily legal, rather than factual,

Page 5

summary judgment is particularly appropriate). The tenor of many of the arguments made by the Plaintiff show this to be the case. In particular, the Plaintiff, in support of his Motion for Summary Judgment, relies heavily on the rules governing workers' compensation in Ohio and the state-court judgment entered in the Plaintiff's favor under these rules. For this purpose, the substance of the Plaintiff's position is that the "the Defendant cannot re-litigate the 'intentional acts' ruling made by Defiance County Common Pleas Court." (Doc. No. 12).

While not directly stated, the Plaintiff's position, that the Defendants cannot re-litigate the issue of their liability, necessarily raises the doctrine of collateral estoppel. This legal doctrine, also known as "issue preclusion," prevents the same parties or their privies from re-litigating facts and issues in a subsequent suit that were fully litigated in a prior suit. *Thompson v. Wing*, 70 Ohio St.3d 176, 183, 637 N.E.2d 917, 923 (1994). Collateral estoppel principles apply to bankruptcy proceedings and can be used in nondischargeability actions to prevent the re-litigation of issues already decided in a state court. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

When applying collateral estoppel principles from a state court judgment to a nondischargeability proceeding, the Supreme Court of the United States has held that the federal common law does not apply. *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 374, 105 S.Ct. 1327, 1328, 84 L.Ed.2d 274 (1985); *see also Bay Area Factors, Inc. v. Calvert (In re Calvert)*, 105 F.3d 315, 317 (6th Cir.1997). Instead, the bankruptcy courts, pursuant to the full faith and credit principles of 28 U.S.C. § 1738,[1] must give the same issue preclusion effect to a state court judgment as it would be given under that state's law. *Id.* At issue in this matter is a judgment entered by an Ohio state court; consequently, the law in Ohio regarding collateral estoppel will be applied.

---

[1] Setting forth, in relevant part, that "records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."

Page 6

Under Ohio law, the party moving for the application of the doctrine of collateral estoppel must show the existence of four elements:

> (1) A final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue;
>
> (2) The issue must have been actually and directly litigated in the prior suit and must have been necessary to the final judgment;
>
> (3) The issue in the present suit must have been identical to the issue involved in the prior suit; and
>
> (4) The party against whom estoppel is sought was a party or in privity with a party to the prior action.

*Murray v. Wilcox (In re Wilcox)*, 229 B.R. 411, 415–16 (Bankr.N.D.Ohio 1998), *citing Cashelmara Villas Ltd. Partnership v. DiBenedetto*, 87 Ohio App.3d 809, 813–14, 623 N.E.2d 213 (1993). All but one of these elements may be disposed of in a cursory fashion in the Plaintiff's favor.

First, for elements one and two, the facts presented to the Court show that, in the state court action, the Defendants defended against the Plaintiff's Motion for summary judgment – *e.g.*, after the entry of summary judgment, the record shows that the Parties reached a settlement concerning the liquidation of the Plaintiff's damages. It, thus, follows that the Parties fully and directly litigated the issue regarding the state court's determination that the Defendants intentionally caused the Plaintiff injury.[2] Concerning the fourth element, an identity of parties, it is undisputed that both the Defendants and the Plaintiff were Parties in the previous state-court litigation, thereby satisfying this element.

---

[2] *See First Bank of Marietta v. Hufford*, 10 Fed.Appx. 449 (9th Cir. 2001) (a party's participation in a summary judgment action will satisfy the "actually litigated" requirement of the collateral estoppel doctrine). *See also* 47 AM. JUR 2D *Judgments* § 494 ("A matter may be 'actually litigated' in the absence of an evidentiary hearing where the issue may be decided on motion.").

Page 7

It is the third element of the collateral estoppel doctrine which requires a more in-depth analysis. Under the third prong of the collateral estoppel doctrine, it must be shown that the issue determined in the prior litigation is identical to the issue sought to be precluded. In a dischargeability action, this means ascertaining whether the factual issues in the prior proceeding were adjudicated "using standards identical to those in the dischargeability proceeding." *Heyne v. Heyne (In re Heyne)*, 277 B.R. 364, 368 (Bankr. N.D.Ohio 2002), citing *Spilman v. Harley*, 656 F.2d 224, 226 (6th Cir.1981). In the matter before the Court, this comparison necessarily begins by examining the factual findings made in the state-court proceeding and determining whether those findings would have been sufficient to sustain a finding that the Defendants' actions were both "willful" and "malicious" within the meaning of § 523(a)(6). *Gonzalez v. Moffitt (In re Moffitt)*, 254 B.R. 389, 394 (Bankr. N.D.Ohio 2000).

In the prior litigation, the state court entered summary judgment in favor of the Plaintiff "on the issue of the Defendant's intentional conduct" and "that such conduct did cause injury to the Plaintiff[.]" This determination was based upon the state court's finding that the "Defendants deliberately removed a safety guard on the machine which caused injury to the Plaintiff[.]" (Doc. No. 12, Ex. 4). As it concerns these findings, the state court's utilization of the word "deliberately" is necessarily key as it concerns this Court's assessment of the Defendants' mental state.

For this purpose, it can be assumed that the state court was affording to the word "deliberately" its ordinary legal meaning. In the legal context, the word "deliberately" has been defined to mean: "Willfully; with premeditation; intentionally; purposely." BLACK'S LAW DICTIONARY 437 (9th ed. 1990).

Set within this definitional framework, the findings made by the state court – that the Defendants deliberately removed a safety device and that such intentional conduct caused injury to the Plaintiff – necessitate this conclusion: The Defendants, acting with specific intent, engaged in conduct which directly lead to the Plaintiff's injury. This conclusion, however, does not answer a more fundamental question, and the one which is necessary to sustain a finding in this Court that the

Page 8

Defendants acted willfully and maliciously for purposes of § 523(a)(6): Whether the Defendants, by removing safety devices on their saw, specifically intended to cause the Plaintiff injury or were substantially certain that an injury would occur? The Supreme Court's decision in *Kawaauhau v. Geiger* illustrates why such a finding is necessary.

In *Kawaauhau v. Geiger*, the creditor suffered an injury to her foot. The debtor was the treating physician. To minimize expenses for the creditor, the debtor sought to treat a potential infection with oral antibiotics, in lieu of using intravenous antibiotics which, although more expensive, would have been more effective. The debtor then departed on a business trip, leaving the creditor in the care of other physicians.

An infection thereafter developed in the creditor's leg and it was decided that the creditor should be transferred to an infectious disease specialist. Despite this, when the debtor returned from his business trip, he canceled the transfer and discontinued all antibiotics, believing that the infection had subsided. It had not, and the creditor's condition deteriorated, eventually requiring amputation of her leg below the knee. While clearly constituting a case of medical malpractice, the Supreme Court in *Kawaauhau v. Geiger* found that, under its enunciated standard for § 523(a)(6), the debt arising from the injury was dischargeable because there was nothing to indicate that the debtor specifically intended that the creditor would incur serious harm to her leg.

In this case, the language of the state court order is devoid of any language regarding whether the Defendants acted with the specific intent to cause the Plaintiff harm, or were substantially certain that an injury to the Plaintiff would result. At the same time, the state court order cannot be read in isolation. The court's order, and findings therein, is based upon the application of Ohio's law on workers' compensation, and the court's finding that the Defendants were liable under this statutory scheme. The state court's order, finding that the Defendants acted "deliberately," thus, should be read with reference to Ohio's law on workers' compensation.

Under Ohio law, an employer, such as the Defendants, is required to participate in the workers' compensation system. O.R.C. § 4123.01(B). Under this system, participating employers are granted immunity for injuries suffered by their employees that have been received in the course of or arising out of the injured worker's employment. O.R.C. §4123.74. An exception, however, to employer immunity from liability is provided for intentional torts.

Ohio Revised Code § 2745.01[3] provides, in relevant part:

(A) In an action brought against an employer by an employee, or by the dependent survivors of a deceased employee, for damages resulting from an intentional tort committed by the employer during the course of employment, the employer shall not be liable unless the plaintiff proves that the employer committed the tortious act with the intent to injure another or with the belief that the injury was substantially certain to occur.

(B) As used in this section, "substantially certain" means that an employer acts with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death.

(C) Deliberate removal by an employer of an equipment safety guard or deliberate misrepresentation of a toxic or hazardous substance creates a rebuttable presumption that the removal or misrepresentation was committed with intent to injure another if an injury or an occupational disease or condition occurs as a direct result.

The state court's determination of liability against the Defendants was based upon the application of this statute. For this purpose, a few things stand out to this Court.

First, paragraph (A) of § 2745.01 specifies that liability cannot be imposed upon an employer for an employee's injury merely because it is found that the employer committed an intentional tort.

---

[3] On two separate occasions, the Ohio Supreme Court has held that this provision is constitutional. *Kaminski v. Metal & Wire Prods. Co.*, 125 Ohio St. 3d 250, N.E.2d 1066 (2010); and *Stetter v. R.J. Corman Derailment Servs.*, L.L.C., 125 Ohio St. 3d 280, N.E.2d 1092 (2010) (holding that R.C. 2745.01 limits intentional tort lawsuits, but does not eliminate the common law cause of action for an employer's intentional tort).

Rather, liability under § 2745.01(A) can only be imposed if it is determined that the employer "committed the tortious act with the intent to injure another or with the belief that the injury was substantially certain to occur." This language, by specifying that the tortfeasor must intend the consequences of their actions, and not simply the action itself, necessarily imposes a specific intent requirement as a prerequisite to a finding of liability. As such, the mental state requirement of § 2745.01 is consistent with the "willful" requirement of § 523(a)(6) which likewise imposes a specific intent requirement.

Second, the specific intent requirement of both § 523(a)(6) and O.R.C. § 2745.01 may be found to exist where the actor, although not directly intending to cause harm, is substantially certain that a harm will result. Significant for this purpose, paragraph (B) of § 2745.01 goes on to define "substantially certain" so as to mean "that an employer acts with *deliberate* intent to cause an employee to suffer an injury . . . ." (emphasis added). The state court's finding, that the Defendants deliberately removed a safety guard on the machine which caused injury to the Plaintiff, thus, easily lends itself to the conclusion that the court had determined that the Defendants had acted with substantial certain that an injury to the Plaintiff would result.

In this regard, with the state court assessing liability against the Defendants on the basis of § 2745.01, there is no reason to suppose that its use of the word "deliberately" in its order was not meant to be afforded the same meaning as used in the statute. The conclusion is reinforced by paragraph (C) of § 2745.01 which provides: "Deliberate removal by an employer of an equipment safety guard . . . creates a rebuttable presumption that the removal . . . was committed with intent to injure . . . ."

In seeking, therefore, to afford the order entered by the state court its proper due, the above considerations lend themselves to this conclusion: The findings of fact made by the state court, particularly those regarding the Defendants' mental state, are of sufficient gravity so that they would, if transplanted to this adversary proceeding, sustain a determination that the Defendants' acted "willfully" for purposes of § 523(a)(6). The same conclusion is also true for the "malicious"

Page 11

requirement of § 523(a)(6) which, although technically different in meaning, largely overlaps with the meaning of "willful" as used in the statute. In this regard, the word "maliciously," as contained in § 523(a)(6), has been defined as an act done in conscious disregard of one's duties or without just cause or excuse; no ill-will hatred or spite is required. *Vulcan Coals, Inc. v. Howard*, 946 F.2d 1226, 1229 (6th Cir.1991).

Excluding the judgment entered against the Defendants from the scope of a bankruptcy discharge is also consistent with policy considerations underlying both § 523(a)(6) and O.R.C. § 2745.01. Both the Bankruptcy Code and Ohio's law on workers' compensation were intended to confer certain benefits on persons such as the Defendants. Importantly, the Bankruptcy Code provides a debtor a discharge, 11 U.S.C. § 727(a), while workers' compensation in Ohio provides immunity to an employer for injuries sustained by an employee at work. O.R.C. § 4123.74.

The protection afforded to employers by workers' compensation is, however, limited to the employer-employee relationship. Hence § 2745.01's exclusion of intentional torts from the immunity afforded to employers by the Ohio workers' compensation system, with such conduct being considered beyond the scope of the employment relationship. *Brady v. Safety–Kleen Corp.*, 61 Ohio St.3d 624, 635, 576 N.E.2d 722 (1991) (intentional torts necessarily occur outside of the employment relationship; therefore, such actions are not subject to workers' compensation).

Likewise, § 523(a)(6), whose policy is aimed at claims arising from a debtor's socially and/or and morally reprehensible conduct, applies generally to intentional torts. As noted by the Supreme Court, in *Kawaauhau v. Geiger*, "§ 523(a)(6)'s formulation triggers in the lawyer's mind the category 'intentional torts,'. . . ." 523 U.S. at 58. On whole, therefore, where sufficient findings are made by an Ohio state court, concerning a debtor's liability for an intentional tort under § 2745.01, the policy of § 523(a)(6) is furthered by a determination of nondischargeability.

In conclusion, the Court holds that the findings made in state court against the Defendants, being based upon the law governing workers' compensation in the state of Ohio, equate with a

Peter Ankney v. Thomas McMillen, et al
Case No. 12-3009

"willful" and "malicious" injury for purposes of § 523(a)(6). Therefore, based upon the doctrine of collateral estoppel, the Defendants are precluded from defending in this Court against the Plaintiff's complaint to determine dischargeability. In reaching these conclusions, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that the Plaintiff's Motion for Summary Judgment, be, and is hereby, GRANTED.

***IT IS FURTHER ORDERED*** that the claim held by the Plaintiff, Peter H. Ankney, against the Debtors/Defendants, Thomas and Cheryl McMillen, as based upon a judgment entered by the Court of Common Pleas, Defiance County, Ohio, Case No. 08-CV-39669, be, and is hereby determined to be a nondischargeable debt pursuant to 11 U.S.C. § 523(a)(6).

Dated: June 12, 2012

Richard L. Speer
United States
Bankruptcy Judge

Page 13